UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　Plaintiff,<br>v.<br><br>$13,245,943.56 US DOLLARS SEIZED<br>FROM PNC BANK ACCOUNT x5118, &<br><br>$69,980,912.36 USD COIN SEIZED<br>FROM COINBASE ACCOUNT x1085,<br>　　　　　Defendants. | CIVIL NO. ___ |

VERIFIED COMPLAINT FOR CIVIL FORFEITURE
IN REM AND NOTICE TO POTENTIAL CLAIMANTS

The United States of America, Plaintiff, files this action for forfeiture in rem against $13,245,943.56 in U.S. Dollars and $69,980,912.36 in USD Coin (the "Defendant Properties"). The United States alleges on information and belief as follows:

JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §§1345 and 1355.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1355, 1391(b) and 1395(a).

THE DEFENDANT PROPERTIES

3. The First Defendant Property is $13,245,943.56 in U.S. Dollars seized from a PNC Bank account with an account number ending in 5118 ("Business

Account x5118"), held in the name of a podiatry practice owned by an individual with initials DSJ.

4. The Second Defendant Property is $69,980,912.36 in USD Coin seized from a Coinbase account with an account number ending in 1085 ("Coinbase Account x1085"), held in the name of the individual with initials DSJ. USD Coin ("USDC") is a type of cryptocurrency that is referred to as a fiat-backed stablecoin, pegged to the U.S. dollar and redeemable on a 1:1 basis.

## STATUTORY BASIS FOR FORFEITURE

5. This is a civil action *in rem* brought to enforce the provisions of 18 U.S.C. § 981(a)(1)(C), which provides for the forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in [18 U.S.C.] section 1956(c)(7) of this title), or a conspiracy to commit such offense." Investment or trading gains made on criminal proceeds are subject to forfeiture as property "derived from" proceeds.

6. A violation of 18 U.S.C. § 1343 (wire fraud) is "specified unlawful activity" under 18 U.S.C. § 1956(c)(7)(A), which incorporates 18 U.S.C. §1961(1)(D). A violation of 18 U.S.C. § 1347 (health care fraud) is "specified unlawful activity" pursuant to 18 U.S.C. § 1956(c)(7)(F). A conspiracy to commit health care fraud is a violation of 18 U.S.C. § 1349.

7. Title 18 U.S.C. § 984 (civil forfeiture of fungible property) provides that funds deposited in an account in a financial institution that are found in the same account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture so long as the action is commenced within one year from the date of the offense.

8. This action is also brought to enforce the provisions of 18 U.S.C. § 981(a)(1)(A), which provides for the forfeiture of "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 [of Title 18], or any property traceable to such property."

9. The United States alleges (a) that both Defendant Properties are subject to forfeiture because they constitute or are derived from the proceeds of federal health care fraud (18 U.S.C. § 1347) and wire fraud (18 U.S.C. § 1343), as well a conspiracy to commit those offenses; and (b) that the $69,980,912.36 in USDC is also subject to forfeiture as property "involved in" money laundering transactions in violation of 18 U.S.C. § 1957, or traceable to such property.

## FACTS

10. DSJ is an individual who owns a podiatry practice in the Southern District of Texas. The United States has reason to believe that since approximately late 2022, DSJ has fraudulently billed for expensive Bioengineered Skin Substitute patches ("Skin Substitute"), a product designed to treat chronic non-healing wounds.

Fraudulent Skin Substitute billings for a single patient were often in excess of $150,000 and sometimes $2 million.

**A.    The Fraud**

11.    As a result of the investigation into this matter, the United States has reason to believe that DSJ's podiatry practice repeatedly billed Medicare for Skin Substitute when the product was not medically reasonable or necessary for the patient. Knowingly billing Medicare for medically unreasonable or unnecessary services in violation of program rules—or falsifying the nature of the services rendered—constitutes a violation of 18 U.S.C. § 1347, among other statutes. A claims analysis showed that many patients did not have the required history of failed conventional wound treatment for at least 30 days, and that the podiatry practice would regularly purchase the largest size of Skin Substitute patch to use for patients.

12.    Certain individuals who worked at DSJ's podiatry practice were interviewed and reported false documentation that the patient had a large wound and that the wound became smaller on each subsequent visit.  There were also patient complaints about being billed for dates of service on days when the patients had not come to the office.

13.    Interviews of multiple Medicare beneficiaries who were patients of the practice showed a pattern of fraud rather than medical necessity. One patient reported that Skin Substitute patches were used for a mole on that patient's leg and

4

that DSJ said that the patches would make the patient's legs look younger. Another patient stated that they were given Skin Substitute patches for a mosquito bite and that DSJ told the patient that the patches would also help with the foot pain that had brought them to the office. The United States alleges that DSJ billed for and used the Skin Substitute for numerous patients who did not have any type of wound, much less a chronic wound.

14. In February 2023, a medical review was conducted for 20 of DSJ's Skin Substitute claims, resulting in all 20 of the claims being denied. DSJ received a 9-page education letter explaining the medical necessity requirements and inadequate documentation, with examples from the denied claims. A later medical review of 60 claims in January/February 2024 still showed a 100% error rate, with inconsistencies and missing documentation.  Among other things, the review found that DSJ's documentation did not describe how the wound had responded to prior conservative treatments, and it did not contain baseline wound measurements.  In addition, multiple records had inconsistencies, including that the units billed to Medicare did not correlate to the units that were utilized according to the records.

15. In 2021, Medicare had paid DSJ's practice approximately $170,000 for treatment related to Skin Substitutes. Thereafter, the billed and paid amounts grew exponentially, until approximately 99% of the Medicare payments to DSJ's practice were related to Skin Substitute claims. By 2023, Medicare payments alone made up

over 75% of all income to DSJ's podiatry practice.

16. From 2023 through August 2024, Medicare paid DSJ's practice over $44 million for claims related to Skin Substitutes and less than $600,000 for all other claims. The United States alleges that the Skin Substitute health care fraud was pervasive and supported the entire podiatry practice.

B. **The Business Bank Account**

17. DSJ's podiatry practice instructed Medicare to make deposits into its PNC Bank account, Business Account x5118, for paid claims. From March 2024 through August 2024 (which is within the last twelve months in accordance with Section 984), Medicare alone paid more than $25 million from Skin Substitute claims directly into Business Account x5118. In September 2024, the United States seized $13,245,943.56 from that account, which is less than the $25 million that could have been seized.

18. The United States alleges that the seized $13,245,943.56 is subject to forfeiture as proceeds of health care fraud and wire fraud, either directly or through application of Section 984.

C. **The Coinbase Account**

19. Until August 2024, DSJ maintained a personal bank account at PNC Bank with an account number ending in 4329 ("Personal Account x4329") and funded it from Business Account x5118. Bank records show that from August 2022

through August 2024, Personal Account x4329 received transfers from Business Account x5118 of more than $27 million. The individual transfers were large, usually between $15,000 and $3 million, and it is believed that the transfers were money laundering transactions in violation of Title 18, United States Code, Section 1957 because each financial transaction contained more than $10,000 in health care fraud proceeds.

20. Coinbase Account x1085 is held in the name of DSJ, and the account balance in August 2022 was zero. Beginning in September 2022, the Coinbase Account was funded mainly by funds originating in Business Account x5118, then transferred to DSJ's Personal Account x4329, then transferred to Coinbase Account x1085. There were large transfers from DSJ's Personal Account x4329 to Coinbase Account x1085, including 17 wires in amounts between $500,000 and $2.5 million that are believed to have violated Section 1957. In total, DSJ funded Coinbase Account x1085 via ACH transfers or wire transfers totaling approximately $18,329,000 from Personal Account x4329, which was in turn funded by Business Account x5118.

21. There were also transfers back and forth between Coinbase Account x1085 and a personal JPMorgan Chase Bank account with an account number ending in 0800, held in the name of DSJ ("Chase Account x0800"). Between September 2022 and April 2023, Chase Account x0800 received a total of $719,940 from

Coinbase Account x1085; and transferred a total of $769,100 to Coinbase Account x1085. A monetary transaction of $700,000 wired from Chase Account x0800 to Coinbase Account x1085 on or about April 17, 2023, is believed to have violated Section 1957.

22. DSJ deposited approximately $18,329,000 in U.S. Dollars from his Personal Account x4329, plus minimal net funds from his Chase Account x0800, into his Coinbase Account x1085. There are no other known deposits into Coinbase Account x1085. The value of Coinbase Account x1085 grew to over $70 million by August 2024, apparently from trading in highly volatile virtual currencies. At the time the seizure warrant was executed, Coinbase Account x1085 held $69,980,912.36 in USD Coin.

23. The United States alleges that the funds seized from Coinbase Account x1085 both (a) constitute or were derived from health care fraud proceeds and wire fraud proceeds; and (b) constitute property involved in money laundering in violation of Section 1957, or property traceable thereto.

## NOTICE TO ANY POTENTIAL CLAIMANT

YOU ARE HEREBY NOTIFIED that if you assert an interest in the property subject to forfeiture and want to contest the forfeiture, you must file a verified claim which fulfills the requirements set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. The verified claim must

be filed no later than 35 days from the date this Complaint was sent to you in accordance with Rule G(4)(b); or, if this Complaint was not sent to you, no later than 60 days after the first day of publication of notice on an official government forfeiture internet site, in accordance with Rule G(5)(a)(ii)(B). An answer or a motion under Rule 12 of the Federal Rules of Civil Procedure must be filed no later than 21 days after filing the verified claim. The claim and answer must be filed with the United States District Clerk for the Southern District of Texas.

## CONCLUSION AND RELIEF REQUESTED

The United States submits that at trial, it will be able to prove by a preponderance of the evidence that DSJ committed health care fraud and wire fraud, that DSJ's podiatry practice received more than $44 million in Medicare payments for fraudulent claims related to Skin Substitutes, and that the two Defendant Properties are subject to forfeiture as property constituting or derived from fraud proceeds and/or as property involved in money laundering.

The United States will serve notice of this forfeiture action, along with a copy of the Complaint, on the owners of the Defendant Properties and on any person who reasonably appears to be a potential claimant. The United States demands a jury trial. The United States seeks a final judgment forfeiting the Defendant Properties to the United States and requests any other relief to which the United States may be entitled.

Respectfully submitted,

NICHOLAS J. GANJEI
United States Attorney

By:  /s/ Kristine E. Rollinson
Kristine E. Rollinson
SDTX Federal No. 16785
Texas State Bar No. 00788314
Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, Texas 77002
Telephone (713) 567-9000

## VERIFICATION

I, Monika Dafflitto, Special Agent with the Federal Bureau of Investigation, declare under the penalty of perjury, as provided by 28 U.S.C. §1746, that I have read the foregoing Verified Complaint for Civil Forfeiture In Rem and Notice to Potential Claimants, and that the facts stated in paragraphs 3 - 4 and paragraphs 10 - 23 of the Complaint are based upon my personal knowledge, upon information obtained from other law enforcement personnel, or upon information I obtained in the course of my investigation. Those facts are true and correct to the best of my knowledge and belief. Signed on this 31st day of January 2025.

Monika Dafflitto, Special Agent
Federal Bureau of Investigation

10